IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MAURICE PATTERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CITY OF CHICAGO, CHICAGO POLICE | ) |
| OFFICERS ROBERT GARZA (#7871), ANTHONY | ) |
| AMATO (#8030), WILLIAM DAVIS (#21157), | ) |
| DELORES MYLES (#20242), BRIAN FORBERG | ) |
| (#21249), J. FOSTER (#20288), JAMES | ) |
| MICHAELS(#20317), TIM NOLAN (#20171), | ) |
| RONALD LEWIS (#20309), and other | ) |
| AS-OF-YET UNKNOWN EMPLOYEES OF THE CITY | ) |
| OF CHICAGO, and MICHAEL KOPINA, | ) |
| | ) |
| Defendants. | ) JURY TRIAL DEMANDED |

**COMPLAINT**

NOW COMES Plaintiff, MAURICE PATTERSON, by and through his
attorneys, LOEVY & LOEVY and MACARTHUR JUSTICE CENTER, and
complaining of Defendants, CITY OF CHICAGO, ROBERT GARZA,
ANTHONY AMATO, WILLIAM DAVIS, DELORES MYLES, BRIAN FORBERG, J.
FOSTER, JAMES MICHAELS, TIM NOLAN, RONALD LEWIS, and AS-OF-YET
UNKNOWN EMPLOYEES OF THE CITY OF CHICAGO [hereinafter "Defendant
Officers"], and MICHAEL KOPINA, and alleges as follows:

**Introduction**

1.    Plaintiff Maurice Patterson spent more than eight
years in prison for a murder that he did not commit.

2.    Mr. Patterson was convicted after the police manipulated witnesses, fabricated evidence and withheld a DNA laboratory report containing DNA results that would have demonstrated his innocence of this crime.

3.    Despite Mr. Patterson's innocence, Defendant Officers managed to procure false witness identifications and statements allegedly establishing how Mr. Patterson supposedly killed the victim.  The Defendants knew that these statements were false.

4.    Were it not for Mr. Patterson's determination to prove his innocence, he never would have learned of the lab report and its exculpatory content.  In 2007, Mr. Patterson filed a *pro se* Freedom of Information Act request with the Illinois State Police ("ISP"), requesting the lab reports from his case.  Among the documents included in response was the lab report that had been withheld from him prior to trial.

5.    Shortly after this revelation, the State moved to vacate Mr. Patterson's conviction and dismissed all charges against him.  This lawsuit seeks redress for Maurice Patterson's injuries and for Defendants' misconduct.

### Jurisdiction and Venue

6.    This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2

7.     This Court has jurisdiction pursuant to 28 U.S.C. §
1331.  Venue is proper under 28 U.S.C. § 1391(b).  Events giving
rise to this complaint occurred in this judicial district.

### The Parties

8.     Plaintiff is a 45 year-old resident of Chicago, where
he was born and raised.  Plaintiff is the father of three
children.  Prior to his wrongful arrest for this murder,
Plaintiff was employed in a variety of capacities, including as
a groundskeeper for the Chicago Park District.

9.     Defendants Robert Garza, Anthony Amato, William Davis,
Delores Myles, Brian Forberg, J. Foster, James Michaels, Tim
Nolan and Ronald Lewis are current or former police officers
with the City of Chicago Police Department ("Department").  Each
of the Defendant Officers is sued in his individual capacity,
and each acted under color of law and in the scope of his
employment in engaging in the actions alleged in this Complaint.

10.    Defendant City of Chicago is a municipal entity that
employs or employed the Defendant Officers, including the as-of-
yet unknown Defendants.

11.    Defendant Michael Kopina is a current or former
employee of the Illinois State Police.  He is sued in his
individual capacity and acted under color of law and in the
scope of his employment in engaging in the actions alleged in
this Complaint.

3

## Background

12.   On April 3, 2002, a man fatally stabbed Robert Head on the 7100 block of South Marshfield.   Three witnesses allegedly witnessed the attack on Mr. Head:   Mary Starnes, Leslie Herron, and Harry Phillips.   None of the eyewitnesses identified Plaintiff as the attacker that night.

13.   Although each of the eyewitnesses failed to identify the attacker on the night of the murder, the Defendant Officers, with no leads, coerced each of the eyewitnesses into naming Mr. Patterson as the perpetrator.   That coercion was never disclosed to Mr. Patterson.

14.   For example, as a result of undue pressure and coercion, Leslie Herron identified Mr. Patterson as the offender.   To induce that false identification, and later her testimony at trial, the Defendant Officers held Ms. Herron for three days without providing her with anything or anywhere to sleep, and withheld food and water from her.   When Ms. Herron still had not identified Mr. Patterson, the Defendant Officers fed her Mr. Patterson's name and then intentionally permitted her to "overhear" their discussion about the fact that Mr. Patterson was "Number Three" in the lineup.

15.   Ms. Herron's identification of Mr. Patterson was false.   In truth, Mr. Patterson does not look like the offender that Ms. Herron saw murder Mr. Head, and Ms. Herron has no

4

knowledge whatsoever that Mr. Patterson was involved in Mr. Head's murder.

16. None of the circumstances surrounding Ms. Herron's tainted and false identification were ever disclosed to Mr. Patterson and his defense team.

17. Once the Defendant Officers had secured the false inculpatory statements from the eyewitnesses, the police buried all the substantial evidence suggesting that someone else had committed the crime.

18. In particular, the Defendants concealed the lab report, which would have demonstrated that someone other than Plaintiff was responsible for Mr. Head's murder.

### The Withheld DNA Evidence

19. After retracing the escape route of the attacker, the police had previously located a knife with visible blood on it. Ms. Starnes identified the knife as the one used in the attack on Mr. Head.

20. Defendant Myles forwarded the knife to the ISP for fingerprint and blood analysis. Once the ISP confirmed that there was blood on the knife blade and handle, swabs were delivered to Orchid Cellmark Laboratories ("Cellmark"), a private forensic laboratory, for testing.

21. On September 18, 2002, Cellmark wrote a lab report, addressed to Defendant Kopina, stating that DNA from the blood

5

stain on the knife blade matched the victim, Robert Head. In addition, the Report stated that the DNA from the knife handle was a mixture of Mr. Head's DNA and a "deduced" second male DNA profile that was listed in the report. This second male DNA profile was later identified as the DNA of James Starkey.

22. Despite the obvious exculpatory value of the lab report, the Defendants never disclosed it to either the prosecutor or Mr. Patterson. Had it been turned over, Mr. Patterson would have been able to successfully argue to the jury both that the knife that was located near the crime scene was the murder weapon and that James Starkey was responsible for the crime. Mr. Starkey lived approximately three blocks from the scene of Mr. Head's stabbing and had a prior history of violent offenses.

23. Instead, the prosecution was able to argue without rebuttal at Plaintiff's criminal trial that the knife was not the murder weapon because the victim's blood was not found on the knife. As such, the prosecution claimed that the knife had no evidentiary value for the purposes of Mr. Head's murder.

**The Malicious Prosecution**

24. In November 2003, Plaintiff stood trial for the murder of Robert Head.

25. Based upon the witnesses' coerced testimony and without access to the exculpatory lab report that could have

6

proven his innocence, Mr. Patterson was wrongfully convicted of
the Head murder.

26. During the trial, the Defendant Officers committed
perjury, and conspired to do the same, including knowing false
statements that the victim's blood was not on the knife.

27. At his sentencing following his conviction, Mr.
Patterson maintained his innocence. He told the court:

> "I'm wrongly convicted of a murder I didn't do . . if
> I come back tomorrow, today, next month or a year, or
> five years, I will be back and are you going to
> apologize to me? . . . Because I didn't kill that man.
> I never saw that man, never in my life."

28. Mr. Patterson was sentenced to 30 years in prison.

### Plaintiff's Exoneration

29. Throughout his incarceration, Mr. Patterson was
steadfast in his efforts to prove his innocence.

30. In 2007, while in prison appealing the denial of his
*pro se* motion for post-conviction DNA testing, Mr. Patterson
filed a *pro se* Freedom of Information Act ("FOIA") request with
the ISP, requesting the lab reports from his case. The
documents he received in response to his FOIA request included a
redacted version of the Cellmark lab report, which he had never
previously been provided. Mr. Patterson sent the report to his
then-appellate counsel, who was able to view an unredacted

7

version of the report. This unredacted lab report revealed, for
the first time to any attorney representing Mr. Patterson, that
the victim's DNA was on the knife as well as that of James
Starkey.

31. Following this revelation, the parties agreed that the
case should be remanded back to the Circuit Court for further
proceedings. On remand, the State moved to set aside Mr.
Patterson's conviction and a new trial was ordered.

32. On October 8, 2010, the State dismissed all charges
against Mr. Patterson in a manner indicative of his innocence.
After spending more than eight years incarcerated for a crime
that he did not commit, Plaintiff was finally free.

### Plaintiff's Injuries

33. Plaintiff spent more than eight years in prison for a
crime that he did not commit. Plaintiff must now attempt to
make a life for himself outside of prison without the benefit of
almost a decade of life experiences, which normally equip adults
for that task.

34. Additionally, the emotional pain and suffering caused
by losing eight years in the prime of life has been substantial.
During his wrongful incarceration, Plaintiff was stripped of the
various pleasures of basic human experience, from the simplest
to the most important, which all free people enjoy as a matter
of right. He missed out on the ability to share holidays,

8

births, funerals and other life events with loved ones, the opportunity to fall in love and marry and to pursue a career, and the fundamental freedom to live one's life as an autonomous human being.

35. As a result of the foregoing, Plaintiff has suffered tremendous damage, including physical suffering, all proximately caused by Defendants' misconduct.

## Count I -- 42 U.S.C. § 1983

### Due Process

36. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

37. As described more fully above, all of the Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

38. In the manner described more fully above, the Defendants deliberately withheld exculpatory evidence, fabricated false reports and other evidence, and conducted unduly suggestive lineups, thereby misleading and misdirecting the criminal prosecution. Absent the totality of this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

39. The Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his

9

constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

40. As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to, emotional distress more fully alleged above.

41. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

42. The misconduct described in this Count was undertaken by employees and agents of the City of Chicago, including but not limited to the Defendants, pursuant to the policy and practice of the Chicago Police Department to pursue wrongful convictions through profoundly flawed investigations and coerced identifications, as well as institutional failure to disclose exculpatory DNA results that were inconsistent with the investigators' theory of the case. In this way, the City of Chicago violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

43. These widespread practices, so well-settled as to constitute de facto policy in the Chicago Police Department, were able to exist and thrive because municipal policymakers

with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

44.    The widespread practices described in the preceding paragraphs were allowed to flourish because the City declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

## Count II -- 42 U.S.C. § 1983

### Failure to Intervene

45.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

46.    In the manner described above, during the constitutional violations described above, one or more of the Defendants stood by without intervening to prevent the misconduct.

47.    As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress.    These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

48.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

11

49.   The misconduct described in this Count was undertaken
pursuant to the City of Chicago's policy and practice in the
manner described in the preceding paragraphs.

### Count III -- 42 U.S.C. § 1983

### Conspiracy to Deprive Constitutional Rights

50.   Each of the Paragraphs of this Complaint is
incorporated as if restated fully herein.

51.   After the murder at issue, the Defendants reached an
agreement amongst themselves to frame Plaintiff for the crime,
and to thereby deprive Plaintiff of his constitutional rights,
all as described in the various Paragraphs of this Complaint.

52.   Independently, before and after Plaintiff's
conviction, each of the Defendants further conspired, and
continue to conspire, to deprive Plaintiff of exculpatory
materials to which he was lawfully entitled and which would have
led to his more timely exoneration of the false charges as
described in the various Paragraphs of this Complaint.

53.   In this manner, the Defendants, acting in concert with
other unknown co-conspirators, including persons who are not
members of the Chicago Police Department, have conspired by
concerted action to accomplish an unlawful purpose by an
unlawful means.

54.   In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

55.   As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

56.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

57.   The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully in preceding paragraphs, and was tacitly ratified by policymakers for the City of Chicago with final policymaking authority.

## Count IV -- 42 U.S.C. § 1983

### Supervisor Liability

58.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

59.   The constitutional injuries complained of herein were proximately caused by a pattern and practice of misconduct, which occurred with the knowledge and consent of those of the Defendant Officers who acted in a supervisory capacity, such that these officers personally knew about, facilitated,

13

approved, and/or condoned this pattern and practice of misconduct, or least recklessly caused the alleged deprivation by their actions or by their deliberately indifferent failure to act.

60. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

61. The misconduct described in this Count was undertaken pursuant to the City's policy and practice in the manner more fully described above.

62. As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

**Count V -- State Law Claim**

**Intentional Infliction of Emotional Distress**

63. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

64. In the manner described more fully above, by wrongfully inculpating Plaintiff in a crime he did not commit, Defendants intended to cause emotional distress.

65. In doing so, Defendants' conduct was extreme and outrageous and caused Plaintiff severe, disabling emotional distress.

14

66.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

67.   As a result of this misconduct, Plaintiff sustained injuries, including emotional pain and suffering, as is more fully alleged above.

## Count VI- State Law Claim

### Malicious Prosecution

68.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

69.   Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no legitimate probable cause.   These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of innocence.

70.   Defendants accused Plaintiff of criminal activities knowing those accusations to be without genuine probable cause, and made statements to the police and/or prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

71.   Defendants also fabricated evidence and failed to disclose the manner in which that evidence was fabricated, and withheld evidence that would have proven Plaintiff's innocence.

72.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

73.  As a result of this misconduct, Plaintiff sustained injuries, including emotional pain and suffering, as more fully alleged above.

### Count VII -- State Law Claim

### Respondeat Superior

74.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

75.  In committing the acts alleged in the preceding paragraphs, Defendant Officers were members and agents of the Chicago Police Department, acting at all relevant times within the scope of their employment.

76.  Defendant City of Chicago is liable as the principal for all torts committed by its agents.

### Count VIII -- State Law Claim

### Indemnification

77.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

78.  Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

16

79.    The Defendant Officers are or were employees of the Chicago Police Department, and acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, MAURICE PATTERSON, respectfully requests that this Court enter judgment in his favor and against the Defendants, CITY OF CHICAGO, ROBERT GARZA, ANTHONY AMATO, WILLIAM DAVIS, DELORES MYLES, BRIAN FORBERG, J. FOSTER, JAMES MICHAELS, TIM NOLAN, RONALD LEWIS, and AS-OF-YET UNKNOWN EMPLOYEES OF THE CITY OF CHICAGO [hereinafter "Defendant Officers"], and MICHAEL KOPINA, and awarding compensatory damages, costs and attorneys' fees, along with punitive damages against each of the Defendants in their individual capacities along with whatever additional relief this Court deems appropriate.

**JURY DEMAND**

Plaintiff, MAURICE PATTERSON, hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all issues so triable.


RESPECTFULLY SUBMITTED,

/s/Gayle Horn


Jon Loevy
Gayle Horn
LOEVY & LOEVY
312 N. May Street, Suite 100
Chicago, IL 60607
(312) 243-5900


17