IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 11 C 7052 |
| v. | ) | |
| | ) | Judge Kennelly |
| CITY OF CHICAGO et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

NOW COMES Plaintiff, MAURICE PATTERSON, by and through his attorneys,

LOEVY & LOEVY, and hereby moves for an order from this Court compelling the City of

Chicago and Chicago Police Defendants (hereinafter "Defendants") to respond to certain

discovery requests. Plaintiff specifically seeks the individual Defendants' personnel files,

complaint register files, complete employee complaint history, any remedial programs that the

Defendants have been placed in (Behavioral Alert Program and/or Personnel Concerns Program)

and facts and documents supporting their denials to Plaintiff's request to admit. In support

thereof, Plaintiff states as follows:

### Introduction

The Plaintiff in this case, Maurice Patterson, spent eight years incarcerated for a murder

that he did not commit. Compl. at ¶ 1. Mr. Patterson's conviction was overturned in 2010 after

Mr. Patterson discovered a DNA lab report that had been withheld from him and that

conclusively established his innocence. Id. at ¶¶ 2-5, 34. This critical Report was withheld,

Plaintiff has alleged, because the Defendant Officers improperly built a case against him;

namely, by coercing witness into identifying Plaintiff as the murderer, fabricating evidence in

order to inculpate Plaintiff, withholding the fact that the witnesses against him were coerced, conducting improper line-ups and photo arrays, and committing perjury when called to testify about their investigation. Id. at ¶¶ 15-16, 20-24, 28. Plaintiff also has alleged a Monell claim against the City of Chicago. Id. at ¶¶ 44-46.

Plaintiff has attempted to conduct discovery into these matters, and gather potentially relevant information to support his claims against the Defendants. The Defendants, however, have adopted an unduly narrow view of the case, and have objected and refused to turn over discoverable information requested by Plaintiff that is necessary to prove the above claims. As such, Plaintiff had no choice but to involve the Court to compel the Defendants to produce this information.

## Argument

## I. The Defendant Officers' Personnel Files, And All Information Contained Therein Are Relevant and Discoverable

Plaintiff's Document Request Number 16 to each Defendant Officer sought, in part, each Officer's employee personnel file. Despite the fact that it is well-settled law in this District that those files are discoverable, Defendants have taken the unreasonable position that the disclosure of personnel files maintained by the Department would violate state law, as well as the Officers' privacy. That position is frivolous.

Courts in this District have long held that personnel files are relevant, and thereby discoverable in Section 1983 cases. See e.g., Bond v. Utreras, Case No. 04 C 2617, 2006 WL 695447, *4 (N.D. Ill. Mar. 10, 2006); Vodak v. City of Chicago, Case No. 03 C 2463, 2004 WL 1381043, at *5 (N.D. Ill. May 10, 2004). In fact, recently, Judge Cox found that the "boat sailed a long time ago" on the City's objection to producing this information. See Exhibit A, Transcript

of Proceedings before the Honorable Judge Cox, Oct. 23, 2008, Hughes v. City of Chicago, Case No. 08 C 627 (N.D. Ill.), at 8; see also id. at 7 (stating that "this matter has been litigated in federal court in the Northern District of Illinois more times than I can count, and the city always loses that argument, and you're going to lose it here too."). The Defendants have failed to offer a notable objection as to why this case should be any different.

Indeed, information contained in the personnel files is relevant both to the claims against the individual officers, and to support Plaintiff's Monell claim against the City. See Bond at *4, citing Vodak at *5 ("Numerous courts have held that the personnel files and complaint histories of defendant officers are relevant in [sec] 1983 actions involving police misconduct, particularly where, as here, plaintiffs allege a Monell policy, practice and custom claim against the municipality."). For example, contained within the personnel files are documents relating to misconduct engaged in by the Officers, which could lead to admissible Fed. R. Evid. 404(b) evidence, as well as evidence admissible for purposes of punitive damages. Likewise, personnel files often contain documents illustrating Officers' involvement in the Behavioral Alert Program and Personnel Concerns Program, which are remedial programs designed to address officer wrongdoing. Based on preliminary discovery, there is a definite possibility that one or more Defendant Officers may have been placed in such a program. Certainly, if that were the case, such information is relevant to Plaintiff's Monell claim, as the documents could provide important information about how the City responds to officer misconduct.

The Defendants only retort to producing the Officers' personnel files is their assertion that doing so would violate HIPAA, the Mental Health and Developmental Disabilities Act and the Illinois Personnel Records Act. None of those objections have merit.

3

Nothing in these personnel files contain psychological or mental health testing that would trigger the application of HIPPA or the Mental Health and Developmental Disabilities Act, as Defendants have alleged, without support. Likewise, the Illinois Personnel Records Act is patently inapplicable as it governs an employee's right to view his personnel file, not whether the file is discoverable in civil litigation. In addition, the Personnel Records Act does not preclude the disclosure of personnel files where "ordered to a party in a legal action." 820 ILCS 40/7(3)(b).

In sum, personnel files are routinely requested during civil discovery and the courts have repeatedly and consistently required their production. The Defendants have offered no reason to deviate from that well-settled law and therefore, they should be ordered to produce their personnel files.

## II. Defendants' Complaint Register Files And Complaint Histories Are Relevant And Discoverable

Although this issue has been raised by the Court in the context of the parties' cross motions for the entry of a protective order, Plaintiff's Document Request Number 18 also sought the Defendant Officers' full and complete complaint register ("C.R.") files, as well as employee complaint histories.[1] While the Defendants have agreed to produce some of those files, they have attempted to unduly narrow the issues and scope of the discoverable files. None of the Defendants' objections, however, have merit.

---

[1] Plaintiff recognizes that this issue might arise during the status on March 26, 2012, as the Defendants were ordered to produce C.R. files to Plaintiff in advance of this Court's ruling on the protective order. Plaintiff raises this motion to compel, however, because the parties cannot agree on the scope of C.R. files that should be disclosed.

4

## A.    C.R. Files

To start, the Defendants have suggested that Plaintiff is only entitled to C.R. files that were initiated between 1997-2007.  That timeframe, however, does not adequately account for Plaintiff's allegations in his Complaint.  Plaintiff has alleged that the Defendant Officers withheld evidence – the DNA Lab Report that ultimately exonerated Plaintiff, and the fact that witnesses were coerced into identifying Plaintiff.  Under Steidl v. Fermon, 494 F.3d 623, 630 (7th Cir. 2007), the Defendants had an "ongoing duty" to disclose that exculpatory evidence to Plaintiff, but no such disclosure was ever made.  See also id. ("For evidence known . . . at the time of the trial, the duty to disclose extends throughout the legal proceedings that may affect either guilt or punishment, including post-conviction proceedings.").  Rather, Plaintiff only learned of the DNA Lab Report through his own FOIA request and the coercion after undertaking his own investigation into this case.  Therefore, the Defendants wrongdoing is not limited to their actions during the investigation and prosecution of Plaintiff in 2002 and 2003; to the contrary, it continued until 2010, when all charges against Plaintiff were dismissed.  As a result, Plaintiff believes that at a minimum, he should be able to discover C.R. Files for the officers that occurred up to 2010.

In addition, the Defendants have sought to limit the types of C.R. Files that Plaintiff could access to only those addressing "withholding evidence" or "improper lineup procedures."  Courts have repeatedly rejected attempts to limit the discovery of C.R. files with similar substantive limitations.  For example, the Vodak Court stated,

> Defendants argue that the Court should limit disclosure of prior complaints against defendant officers to the past five years and only those complaints similar to those raised in this lawsuit.  The Court declines to so limit discovery.  Plaintiffs are entitled to discovery defendant officers' complaint histories, and the trial judge will determine

before or at trial whether 'other acts' are similar enough and close enough in time to be relevant to the matter in issue and thus, admissible.

See Vodak, 2004 WL 1381043, at *5. The courts' refusal to entertain the Defendants' myopic view of discoverable C.R. files is for good reason. First, from a practical perspective, the categorization of C.R. files (on which the Defendants rely for determining what files to disclose) is often misleading: For example, even if a file is categorized as an unlawful search, it may contain a number of allegations in addition to that unlawful search, including planting or withholding exculpatory evidence, mistreating an arrestee/suspect and so on. Thus, by limiting disclosure of C.R. files based on the relevant category, it precludes Plaintiff from discovering potentially relevant material.

Second, in this instance, Plaintiff has a Monell claim pending against the City, including, in part, for the City's failure to discipline and control its officers. Compl. ¶¶ 44-46. For that reason, the sheer number of C.R. files for each officer will be relevant and necessary to evaluate the rate of C.R. files that were sustained by the City.[2]

Third, although the Defendants believe that Plaintiff's Complaint addresses only withheld evidence or improper lineups, the Complaint is much broader than that. In particular, Plaintiff has alleged that the Defendants (1) withheld both the September 18 Report and the fact that the witnesses were coerced (Compl. ¶¶ 20, 24); (2) coerced witness into identifying Plaintiff (Compl. ¶¶ 15-16); (3) fabricated evidence in order to inculpate Plaintiff (Compl. ¶¶ 15-16); (4) conducted improper lineups/photo arrays (Compl. ¶ 16); and committed perjury (Compl. ¶ 28).

---

[2]    Similarly, even "older" C.R. files will be relevant for Plaintiff's Monell claim. For example, if there were an officer who had 20 C.R. files in the span of three or four years, an argument could be made that that officer should not have even been on the force at the time of Plaintiff's arrest and investigation. Particularly if no action whatsoever was taken by the City to properly investigate and address the allegations of misconduct in those C.R. files, that malfeasance would be relevant to Plaintiff's Monell claim.

Given the disparity between Plaintiff's allegations and the Defendants' interpretation thereof, it would be problematic to rely on the Defendants to weed out the "similar" C.R. files. That is particularly true because Plaintiff would have no way of challenging the Defendants' disclosure: the Defendants have refused to provide the Plaintiff with complete Employee Complaint Histories (*see* argument below) and even with complete Histories, the "categorization" of C.R. complaints is often incomplete, if not misleading. Moreover, Plaintiff is only in the infancy of discovery and by the Court's order is entitled to amend his pleadings by the end of June. It makes little sense to undertake two rounds of C.R. discovery should Plaintiff's pleadings broaden the scope of misconduct alleged.

### B.    Employee Complaint Histories

Like their production of C.R. files, the Defendants have offered incomplete Employee Complaint Histories.   In particular, to date, the Defendants have provided the Plaintiff with abbreviated Complaint Histories for the Defendant Officers for a six year time period (2000 to 2006). The Defendants have offered no reason why it will not provide complete Employee Complaint Histories other than their self-serving, boilerplate objections that the request is "overly broad" and that production of such Histories would be "unduly burdensome." Neither objection, however, is meritorious.

As explained above, the temporal limitation arbitrarily imposed by the Defendants is incompatible with Plaintiff's allegations in his Complaint: He is alleging that the Defendants' wrongdoing continued until 2010, when all charges against him were dropped (and he was able to discover the withheld DNA report and evidence of coercion). Moreover, there is nothing unduly burdensome about providing Employee Complaint Histories that cover the entirety of the Defendant Officers' career: The Histories themselves are one- to two-page documents that list

C.R. files that the Officer received and the outcome of the investigation into the allegations of wrongdoing. Moreover, even the limited disclosures that the Defendants have provided of the Officers' Complaint Histories – and the attendant sheer number of complaints involved – have demonstrated the importance and relevance of obtaining both the Histories and the complete files for each Defendant Officer. Defendants should therefore be compelled to respond to Plaintiff's request with this information.

## V. Facts and Documents Supporting Defendants' Denials To Plaintiff's Request To Admit Is Relevant And Discoverable

In Plaintiff's Interrogatory Number 10, Plaintiff requested facts and documents that support the Officers' denials to any request to admit. Rather than answer this Interrogatory, the Defendants have objected on the basis that the request is "over broad, unduly burdensome, and requesting information and creating obligations not required by Federal Rule of Civil Procedure 36." This request is hardly over broad or unduly burdensome, or beyond the scope of the Federal Rules, because the City Defendants had to have relied on some facts and/or documents when answering their Requests to Admit. As such, those facts and documents are very important to Plaintiff both for preparing for depositions and deciding whether to amend his pleading or add a party.

For example, each officer answered their Request to Admit with a denial that they received, saw or were aware of the DNA Lab Report that was withheld – and that ultimately led to Plaintiff's exoneration eight years after his arrest—in advance of Plaintiff's criminal trial. Plaintiff seeks the facts or documents that support this denial. Each officer also denied, in sum, that certain witnesses were not in their custody or control at the police station while the witnesses were held for days on end before a formal statement was taken. For example, Leslie Herron, an

8

important witness who was coerced into give testimony implicating Plaintiff in the murder, was held at the police station for questioning for over two days. Each Defendant Officer denied that Ms. Herron was in their custody or control during her duration at the police station. Plaintiff seeks the factual basis for these denials- *e.g.*, a document to prove *who* had custody over the witnesses while they were at the police station. There is nothing over broad or unduly burdensome about this request, particular since any facts contained are contained in documents in control of the City and, as stated, were already relied upon when responding to the Requests to Admit. The Defendants' objections to this interrogatory do not hold weight, and they should be compelled to respond.

### Local Rule 37.2 Compliance

Plaintiff served discovery requests on the City Defendant and Individual Defendant Officers on December 19, 2011. The Defendants answered the Plaintiff's discovery requests, and stated certain objections. See Group Exhibit B (Plaintiff's discovery requests with Defendants' Responses). Through Rule 37.2 correspondence, the parties were able to agree on many of the discovery disputes. See Group Exhibit C (Plaintiff's Counsel's and Defendants' Counsel's Rule 37.2 Correspondence). However, the parties reached an impasse on the above issues, and the Plaintiff now seeks the Court's involvement.

WHEREFORE, Plaintiff respectfully requests an order from this Court compelling the Defendant Officers to produce the individual Defendant Officers' personnel files, complaint register files, complete employee complaint history, any treatment programs that the Defendants have been placed in (Behavioral Alert Program and/or Personnel Concerns Program) and facts and documents supporting their denials to Plaintiff's request to admit.

Respectfully Submitted,


Attorney for Plaintiff


Jon Loevy
Gayle Horn
Roshna Bala Keen
Julie Thompson
Loevy & Loevy
312 N. May St., Suite 100
Chicago, Illinois  60607
(312) 243-5900
(312) 243-5902