IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAURICE PATTERSON, )
Plaintiff, ) Docket No. 11 C 7052
vs. )
CITY OF CHICAGO, et al., ) Chicago, Illinois
) April 11, 2012
Defendants. ) 9:35 a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MATTHEW F. KENNELLY

APPEARANCES:

For the Plaintiff: LOEVY & LOEVY
BY: MS. JULIE M. THOMPSON
312 North May Street, Suite 100
Chicago, Illinois 60607

DESHUR LAW FIRM
BY: MS. ROSHNA B. KEEN
55 West Monroe Street
Suite 3950
Chicago, Illinois 60603

For the Defendant: CITY OF CHICAGO, LAW DEPARTMENT
BY: MS. MEGAN K. MC GRATH
30 North LaSalle Street
Chicago, Illinois 60602

THE SOTOS LAW FIRM, P.C.
BY: MR. JEFFREY N. GIVEN
550 East Devon Avenue
Suite 150
Itasca, Illinois 60143

ROCK, FUSCO & CONNELLY, LLC
BY: MS. EILEEN E. ROSEN
321 North Clark Street
Suite 2200
Chicago, Illiois 60610

ILLINOIS ATTORNEY GENERAL'S OFFICE
BY: MS. MARNI M. MALOWITZ
100 West Randolph Street
13th Floor
Chicago, Illinois 60601

(The following proceedings were had in open court:)

THE CLERK: 11 C 7052, Patterson v. City.

THE COURT: Good morning.

MS. KEEN: Good morning, your Honor; Roshna Keen for plaintiff.

MS. THOMPSON: Julie Thompson for plaintiff.

MS. MC GRATH: Good morning, your Honor; Megan McGrath on behalf of the City.

MR. GIVEN: Good morning, your Honor; Jeff Given seeking leave to appear on behalf of the City.

MS. ROSEN: Good morning, your Honor; Eileen Rosen seeking leave to appear on behalf of the individual defendant police officers.

MS. MALOWITZ: Good morning, your Honor; Marni Malowitz on behalf of defendant Kopina.

THE COURT: Have you always just represented one person?

MS. MALOWITZ: Yes.

THE COURT: All right. So as far as filing additional appearances, you have never had to file a motion to do that. That's never been true in the whole 31 --

MR. GIVEN: Actually the local rule says it. We looked it up because I wanted to be sure to do it right.

THE COURT: It's granted.

MR. GIVEN: 83-something says unless you're part of

the same firm, even if it's just additional, you have to file a motion for leave.

THE COURT: Okay, fine. The motion is granted.

MR. GIVEN: Thank you, your Honor.

MS. ROSEN: Thank you, your Honor.

THE COURT: All right. So I'm going to deal with the two discovery things, and let me just get the right material in front of me here.

So the way I see this, there's basically I think it's either four or five -- I guess five if you count the protective order issue.

So just a second. Here we go.

And the order is going to be very general, okay. So just listen carefully. On the issue of the personnel files, there is no one right or wrong way of doing this. And my experience in reading police department personnel files, which is admittedly limited, is that there's a ton of stuff in there that is absolutely irrelevant. There might be some things that are relevant. So they're to be produced for in camera inspection within ten days. I will determine whether there is anything potentially relevant in them and I will order the production of whatever is.

Let's see. The only downside to this thing is flipping back and forth between your annotations. It requires you to bring up menus and whatnot. The time period on the CR

files, 2010 seems -- going up to 2010 seems reasonable to me, and that was the second issue, as I understood it.

The third issue had to do with categories of CRs and my -- and although my inclination was, you know, originally to tell you to give all this stuff to me to look at, I ain't doing that. We're going to get to the rest of this in a second.

And it is my experience that the way these things are categorized doesn't always cover everything because there are subissues and they have to pick a category, and it's not always the right category, and so I'm not willing to limit the categories, as the defense had argued.

The fourth issue has to do with the complaint histories, and it kind of sounds like to me that those have been produced. Have they, or are about to be?

MS. MC GRATH: Your Honor, what's been produced is everything from what is called the gap history. So the five years that were present when the lawsuit was filed plus five years prior to that, and we're working to --

We have told counsel that we're working to get the rest of those produced. We just haven't --

THE COURT: Okay. But, I mean, there doesn't seem like there's a dispute over that; is there?

MS. THOMPSON: The only remaining dispute would be with the time frame, as we have argued, going up to 2010.

THE COURT: Which I just said 2010 is the right time.

MS. MC GRATH: That has been produced.

THE COURT: So I don't think I have to decide anything on that.

The fifth issue has to do with the interrogatories about the requests to admit denials. So even though --

I'm going to rule in favor of the defendants on this, but I do have to take issue with one thing. And everybody always cites this sometimes fairly ancient or sometimes rather obscure, with the exception of Wright & Miller, thing which says Rule 36 is not a discovery procedure. I commend to your attention the Rules of Civil Procedure, and there are little headings. The heading that precedes Rule 26 says Disclosures and Discovery. It's Title 5. There isn't another heading until you get to Rule 38. That's Title 6 trials.

So requests to admit absolutely are discovery devices. There is just no question about it. And the fact that you might be able to find two judges out of the 700 of us in the country that say otherwise, besides the fact that Wright & Miller, neither of whom ever litigated a case in the trial court, I might add, say that, it's just a bunch of hokum. It's a discovery device.

That said, you don't need this. I mean, it's a question of being reasonable here. And what you're looking for is to make -- to basically make people commit on this

stuff twice. No. You ask them in the deposition.

Then the last thing is the protective order. I don't --

So, first of all, what the state FOIA statute says doesn't govern anything. And so I'm not going to get into deciding what it says. Everybody seems to agree, and it's true, that the standard for discovery is a federal standard. You would certainly take into account confidentiality issues, but it's not binding.

What the real dispute here seems to be about is whether the information ought to be limited to use for this case or ought to be usable for other purposes. That's the real dispute here. And if you want to use stuff for other purposes, then go file a FOIA request. The appropriate use of discovery in litigation is for the litigation. That's my view.

So the protective order is going to say it can only be used for the litigation, period. None of it is to get filed in the public record until there's an occasion to file something in the public record. And if something that is in these personnel files or complaint registers or complaint histories or whatever is something that somebody needs to use at some point, then I will decide then whether it should be in the public record. So none of that stuff is to get filed in the public record unless somebody asks me to.

And then the last thing is this thing about who gets to look at it, and I agree with the plaintiff on this that, you know, whatever undertakings, affidavits, you're calling them, people should keep them for themselves because otherwise you're being required to cough up the identity of your consultants which you're not normally required to cough up.

So I think that basically deals with everything. If there's something else that I missed, tell me; otherwise just fiddle with the protective order along the lines of what I said. Get it to me and I will sign it, and then we'll kind of move ahead from there.

MS. MC GRATH: Your Honor, so you would like us to --

THE COURT: What I'm hoping that you can do is, now that I have ruled on all this stuff, come up with an agreed protective order. Nobody has given up their substantive positions. It's just an agreement as to form.

Send it over on that e-mail address for orders. I will enter it. And if I see a problem, I will let you know, but I probably won't, and I will just enter it, and we'll go ahead from there.

So what else has been happening?

MS. KEEN: I guess the only other thing we just want to advise the Court, update the Court, I should say, is we made a demand in the case a few weeks ago. And I see they have -- the City has two private firms now retained. We have

not gotten a counter.

THE COURT: How long ago did you make the demand?

MS. KEEN: Maybe a month ago, approximately a month ago.

THE COURT: Let me just look back here.

(Brief interruption.)

THE COURT: Yes. So what happened is I think --

I mean, I normally have people exchange settlement proposals before, you know, much anything is done, but I think people were still kind of trying to get the basic discovery underneath, and I think it probably slipped through the cracks.

MS. MC GRATH: Your Honor, I believe if that demand was made, it probably went directly to Mr. Polick, and as you're aware, he's been busy. So I will follow up with him when I get back to the office and see.

THE COURT: Okay. So here's what I'd like you to do. Why don't you respond to it within a couple of weeks, which ought to be enough time. And then I'm going to give you a status date in about four weeks, and we can talk about whether there ought to be a settlement conference.

So let's say you're going to respond to the settlement demand by the 25th. Give me just a second here to page ahead.

MS. MC GRATH: 25th of May, your Honor?

THE COURT: Pardon?

MS. MC GRATH: 25th of May? April?

THE COURT: April. A couple of weeks ought to be enough.

Yes. Let's see. May. Sorry, this thing takes a bit to refresh here.

(Brief interruption.)

THE COURT: Okay. Come in, if you would, on -- if you could come in on the 2nd of May at 9:00, that will be in chambers. It will just be to talk about settlement. And then I will give you another status then for later on.

What's going on discovery-wise?

MS. KEEN: We have requested --

I'm sorry. Go ahead, Julie.

MS. THOMPSON: It's okay.

THE COURT: Has anybody taken any depositions yet? That's my main question.

MS. THOMPSON: We're starting them. They've been noticed, and they're starting soon.

THE COURT: That's good. All right, because you've got a ways to go yet on the discovery cutoff date. I just wanted to make sure that everybody wasn't waiting until October to start taking depositions.

So anybody else have anything you want to talk about?

MS. MC GRATH: Your Honor, just regarding the

personnel file, if you could -- I know you said the --

THE COURT: When?

MS. MC GRATH: -- order is going to be pretty vague, but if the thing -- it would be really important that that language is specifically in the order so we can expedite --

THE COURT: That what language is specifically in the order?

MS. MC GRATH: That we need to produce it in ten days.

THE COURT: Yes, okay. So we need to put in the order that personnel files for the defendant officers are to be provided for in camera inspection by the 23rd of April.

MS. MC GRATH: Thank you.

THE COURT: All right. You need an order, in other words, to go back and give somebody.

MS. MC GRATH: Yes.

THE COURT: I got it. Okay, thanks.

MS. MC GRATH: Thank you.

MS. ROSEN: Thank you, your Honor.

MR. GIVEN: Thank you.

MS. THOMPSON: Thank you.

(Which were all the proceedings had in the above-entitled cause on the day and date aforesaid.)

C E R T I F I C A T E

I hereby certify that the foregoing is a true and correct transcript of the above-entitled matter.

*/s/ Laura M. Brennan* April 18, 2012

Laura M. Brennan
Official Court Reporter
Northern District of Illinois

Date